Case number 12-1845, Sandra Garest v. Barry Booth, MedCon. Good morning, sir. Your name for the record, please. Good morning, Your Honors. I'm Roger Whitman, L-I-T-T-M-A-N, for Defendant Appellant Booth. All right. Let's get everyone's name on the record, if we could, please. Good morning, Your Honors. Michael Sanders, and I represent Defendant Appellant Brigham and Consortium. Thank you, sir. Good morning, Your Honors. Joe Mannix, on behalf of Plaintiff Appellate Lee and Sandra Garest, together with Morella Cavalugo-Sewick. All right. Hold on. Mannix, M-A-N-N-I-X? Yes. Please don't catch me. Counsel, spelling? Sewick, S-I-W-I-K. Thank you. All right. Very good. What's your first name? Morella Cavalugo-Sewick. All right. Counsel, you may proceed. Thank you, Your Honor. Barry Booth was the owner of the property in question. On December 21, 2006, Plaintiff Sandra Garest came onto his property and was injured. She was not intending to go onto his property. In fact, she was on her way to a funeral at an adjacent funeral home called Modell Funeral Home. She parked her car in the Modell Funeral Home parking lot. And rather than going up the hill to the brightly lit Modell Funeral Home, she entered onto the property of Dr. Booth, which is north of Doncha Clinic, and walked to a point where the exit stairway came up. There's a fire exit that came upstairs from the basement, and she apparently did not see these stairs and fell down them. She was injured, and a jury awarded her upwards of $140,000 for those injuries. The question becomes, what was she doing there? What is her status? What was the duty of the defendant at the time? Now, each and every other- Let me ask you a question. Sorry. Looking at the-it's the Fourth Amendment complaint that the plaintiff went ahead on, correct? Fourth Amendment complaint? That was tried on. Right, but it was tried on. How many of the counts of the complaint were against your client? Was it three? There was a-there were two, as I recall. There was a third that had been stricken and was pleaded for the purpose of maintaining an appeal. Okay, so only two counts against your client, and the basis of the liability on those counts were-and you can get it to me if you don't recall. I have it right in front of me, Your Honor. It's not your complaint, so. The negligence of foreseeable users and trespassers. All right. And then willful and wanton. Right. All right. Thank you, sir. So those are the two. To add to that, in the Fifth Amendment complaint, which was filed after the verdict, was the change that was made, was that against your client? It was. Okay. The addition in the Fifth Amendment complaint related to the theory of implied invitation. Yes. Thank you, counsel. Continue. On the date of December 21, 2006, the only individual who made this mistake was Sandra Garris herself. It's useful to note that in the years this case was pending, in the hours and hours of depositions, in the miles of documents that were produced, no other injury of any kind was reported, was documented, was learned of at that premise in any similar situation. Now, the status of Sandra Garris may govern the outcome of the appeal as it may have governed the outcome of the trial. Was Sandra Garris on Booth's premises for a reason of her own? Or, as she testified, was she on Booth's premises by mistake? If she was on mistake, if she was there by mistake, that suggests a different sort of status than if she was there by intention. Now, she was either an invitee or a trespasser under the law of the State of Illinois. Those are the two sorts of status of an individual who comes onto the land of another. Either there's some form of invitation or there's no invitation. Counsel, I ask you, do you claim in your brief, I believe, that she admitted at some point in the testimony that she was a trespasser? She admitted at page C1647 following, that is the page that follows it. And I can read it to the court. Question to Ms. Garris. You were not on his property at all to have anything to do with in furtherance of Dr. Booth's business, correct? Yes, correct. Question. You were lost? I'm sorry. The only reason why you were on his property that day is because you were lost, right? Because I thought I was going to a funeral home there. Question. You were lost? You are mistaken as to a, answer, I was mistaken. Yes. Thank you. So she doesn't actually admit it, but she, well, never mind. Continue, counsel. A trespasser being a status of law, I don't think it's the sort of question we would ask her in trial. Correct. The question is, was she an invitee? In the absence of any express invitation, she is perhaps an implied invitation. There was no testimony that any way, in any way, was she intending to do business. Did she accept an invitation from Dr. Booth or from anyone at his business? Any invitation to the business of an unorthodontist, unlike a white castle, which is across the street, would be the sort of invitation one would presume for normal business hours. We were outside normal business hours in a business that was plainly darkened but for an advertising sign. Now, the big question comes down, what sort of law governs? Mr. Lippman, let me ask you. Express. Assume for the moment that Ms. Garris was a trespasser. Was she a foreseeable trespasser? That's a very good question, Your Honor. And that may, in fact, be the next paragraph I argue. Is she foreseeable under the circumstances at the time the event occurred? Foreseeability has to be taken to account in historical perspective. There was no prior event of any kind. Plaintiffs have attached to their brief an appendix of photographs. Appendix number seven purports to show the situation as it was at the time. While there was no light at the very bottom of that stairwell, there was light at the top. So to that extent, it is not foreseeable that someone would not be able to discern the stairwell. The bottom is lit so that someone can see the bottom. And at the bottom is a sign. Now, the question is, what does foreseeability encompass? Does it encompass the remote possibility, that one in a billion, or is it a reasonable foreseeability? The law requires only that the defendant foresee something reasonably likely to occur. So my response, Your Honor, in one word, no. It is not a foreseeable occurrence. It is not foreseeable. In determining foreseeability, we look at what was apparent to the plaintiff or the defendant. I would say the pure subjectivity of an individual who is lost, intoxicated, or distracted is not the key. The key is what is foreseeable to a reasonable person under similar circumstances. One aspect of which, what is known to the defendant. What risk is known to the defendant and against which he is societally obliged to guard. Given the physical layout at the time in question, he is not open for business. The building is shuttered. There is some light about, but no physical attractiveness to the property. No front door open. No nothing. Persons who are on the premises. It was adequately established at trial that the funeral home was up in an elevation, brightly lit, in a parking lot full of 70 to 80 cars of individuals who all found their way there. No, Your Honor, it is not foreseeable that somebody would make this mistake. It has been held by the Supreme Court of our state that, in retrospect, any single thing may be foreseeable in the dictionary sense of the term. But that is not the legal sense of the term. The reasonability is what governs. So if she is a trespasser, the only duty on the part of the defendant is to refrain from that which is willful and wanton behavior. The courts have held that an open and obvious risk, such as that presented by falling, is not the sort of risk against which the landowner must guard. Open and obvious means that which is obvious through the simplest mammalian impulse not to fall. Was it open and obvious? There was no lighting there. There was generalized lighting in the area. There was uplighting at the foot of the stairwell, which illuminated the overhang. But there was no downlighting directly at that. There's what's called ambient light. And I believe the courts are entitled to look at what evidence the plaintiff introduced at trial in Appendix 7, the photograph, intended to show the approximate condition at the time in question, which permitted, I would think, any reasonable person to see what is there. In her own testimony, Ms. Garris conceded that as she approached the corner of the building, she was able to see well enough to step up over a curb. The next event a few feet past that, maybe a four to six, I think was the testimony, is the downward steps to the back door, or to the fire door, if you will. So, Gadsden to Tress Gadsden. Before you finish up, could you talk a little bit about your issue regarding the jury instructions? I'd like you to get to that. Yes, ma'am. I believe that if there is no proper issue before the court on an implied invitation, there should be no instruction. I think that law is well established. That jury instructions are to instruct the jury on relevant, meaningful issues for which adequate evidence has been appropriately produced. Now here, we begin with the observation that is the lowest on the level of importance. It was not pleaded. That is not going to govern the court's decision here. I concede that. But we go from there to what is indeed truly important. What is the invitation that the plaintiff must accept in order for there to be an invitation? An implied invitation, first and foremost, must be an invitation. There must be an invitation to enter the premises under the circumstances at the time of the injury. That's the Leonardi versus Bradley University case. At the time of the injury, when it's dark, did Dr. Booth have an invitation out to anybody to come on his premises for any purpose whatsoever? The testimony on that is uniformly no. His only invitation was to come to the front door during business hours. Counsel, let me ask you, do you agree there must be something in the record to justify the instruction that's given, some evidence in the record? There must be some evidence. So you're making the distinction that there was some evidence, but it wasn't appropriate evidence? Your Honor, there was no evidence that was relevant to the issue of invitation. One can say that there's always evidence in the record, because the judge allows only evidence in. But what is the import of that evidence, and what is it legally relevant to? Is there a case law that suggests that that's the case? I think the basis is the relevance standard, is that something must be relevant meaning it makes more or less probable an issue in contention. Well, the fact that the evidence was allowed to be entered into evidence or the information, wouldn't that suggest it was relevant? No, it does not. Because merely that it's – well, evidence can be relevant for one purpose and absolutely irrelevant and immaterial and prejudicial for another. So the mere fact that evidence of, say, a subsequent remedial measure is in the record to establish ownership may not be used to establish negligence. Thank you. Continue. Finish up, Counsel. Right. The issue of accepting an invitation. One must be aware of an invitation to accept it. That is a subjective standard. If an individual under two cases is not among the intended group of recipients for the invitation – the Hyatt case. The Hyatt case, an individual went through a fence into a swimming pool. He was not an intended invitee in that he was not a guest of the hotel. The court held that that alone suffices to dismiss the complaint. In the subjective awareness of the individual, she was not aware that this was a dental or an orthodontist building. She was not aware of anything pertaining to it. So she subjectively accepted no invitation. She admitted, and I think it's dispositive, that she was there by mistake. There was no invitation extended to her. She did not accept an invitation. There was no open invitation to anyone out of the premises at the time in question. And the Leonardi case says that it must be an invitation evaluated at the time of the injury. And last on this point, the individual must be present on the premises to confer some putative, arguable benefit, even a fanciful benefit, upon the owner. Ms. Garris conceded she had no knowledge of the owner, no business relationship, no intent to even be aware of the owner of the premises. And if one argues that in the broad subjective sense, by virtue of the premise being advertising itself as an office, Dr. Booth engaged in an invitation to the public, well then we've got the case law dead on point that says that precise sort of invitation is not an implied invitation. And that's the Stevens case cited in our brief, citing Dent versus A&P. A putative benefit to the owner obtained by an advertising benefit to the public at large is not sufficient to constitute implied invitation to an individual. But it comes down to then, Your Honor, if she's not an invitee under any stretch of the term, her only status on the premise is trespasser. The jury found in response to interrogatory, special interrogatory number two, that she was not a trespasser. That was my next question. You anticipated me to ask you to comment on the special interrogatory because it impacts your argument. I think the special interrogatories in and of themselves assure that a new trial should be granted. Interrogatory number one established that in the eye of the jury, she accepted an invitation. Now legally, there was no invitation, nor could she have accepted one, as a matter of law. So the jury should not have been allowed to entertain that issue at all. And prejudice accrues to the defendant simply by virtue of submission of an issue to the jury by which there is, or about which there is no admissible evidence and which the jury utilized to determine the outcome. Second, they determined that she was not a trespasser. Therefore, she could not have been an anticipated trespasser. If one looks at the jury's verdict, she had no status whatsoever. If she was not, if it was inappropriate to submit the first interrogatory as to whether she is, I'm sorry, if it was inappropriate to admit to, let me try this again. If it was entirely inappropriate for the jury to consider the issue of whether she accepted an invitation, if that was inappropriate, she had no status as an invitee. The jury found she had no status as a trespasser, anticipated or otherwise. Therefore, proper issues going to the jury would have determined that she had no status whatsoever. Right there we have a conflict which should be adequate to grant a new trial. However, I think judgment NOV is the better result because there is not only no evidence, sorry for the double negative, there is no evidence supporting her status as a foreseeable trespasser, nor is there evidence supporting her having accepted an invitation, direct or implied or otherwise. Therefore, her status was solely trespasser. And under the law, it is not willful and want, the only duty would be to refrain from willful and wanton. The law is clear. It is not willful and wanton to fail to protect against open and obvious danger, where the only danger presented by that failure to protect is darkness. Meaning, you're under no duty to illuminate an open and obvious danger. Thank you very much for your presentation. Mr. Sanders. May it please the Court. Again, my name is Michael Sanders and I represent Brigham Construction, one of the defendants. Today we have two contentions. First, the judgment against Brigham should be reversed because Brigham's conduct was not the legal cause of the plaintiff's injury. Our second contention is that the judgment should be reversed because the trial court erred when it barred Brigham from making the defenses as an owner-occupier, including the defense of the plaintiff as a trespasser. For our other points, we'll stand on our brief, but I'll be happy to answer any questions that you have. In terms of our first contention, Brigham's conduct was not the legal cause of the plaintiff's injury. At most, our conduct was at most a condition. As our Supreme Court has repeatedly held, a defendant's act is not the legal cause of an injury unless there is enough of a link between the conduct and the injury for which it was committed. Mr. Sanders, the crux of the plaintiff's argument is, but for the fact that it was dark, that she wouldn't have called it, and Brigham is responsible for not installing, not putting the lighting in when the building was first constructed. I mean, that's like the crux of their argument, that if you had put the, if your client had installed the lights, as was required by the approved plan, the area would have been well-lighted and this would never have happened. Why is that not so? Our contention is that it was merely a condition. I mean, first of all, we did this four years before. We allegedly did not put in the right lighting four years before. We had no responsibility in the intervening four years. But it also has to be remembered, we did put in a light in the stairwell. But not the lighting that was in the approved plan. The plan called for four lightings, down lightings, around the building, and there was only one, and it was an up, that was installed when the building was built, and it was an up lighting. I mean, the plaintiff is arguing that, but for the absence of these lights, she wasn't at fault. I mean, I'd just like you to respond to that, because in your brief, you spend a lot of time talking about the intervening four years, and that's not their argument, as I understand it, at all. But we did put in a light in the stairwell, and Ms. Garris' expert testified that that light, when lit, gave out 1.22 foot candles of illumination, and he also testified that had it been lit, it would have put a light against the retaining walls that he says Ms. Garris would have seen and could have avoided the accident. Can't there be more than one proximate cause? There can be more than one proximate cause, but if we create a condition where the acts of Ms. Garris and Dr. Booth can come together and simply create a fruition of an accident, we're simply the condition, we're not the legal cause. This is, for example, like the truck driver who illegally parked his truck, in the case of 1st Springfield v. Galliman, or like in Abrams v. City of Chicago, where the 911 center mishandled the emergency call. In each of those cases, our Supreme Court held that the negligent acts of the defendants merely created a condition for the accident to occur and was not the legal cause. I submit this is the same thing here. Our failure to put in these extra lights merely created the condition for which the acts of Dr. Booth and Ms. Garris could come together to cause the accident. Counsel, the complaint alleges against your client negligent construction, is that right? Yes, Your Honor. It's not based on premises liability? Yes, Your Honor. But you, in turn, explain that to me. Certainly, one of the arguments that we're making, it's my second contention, is that the Court erred when it failed to allow us to make the defenses of an owner-occupier, such as trespassers. In this case, both Dr. Booth and Brigham are being held liable for a condition that was created on the premises. Mr. Sanders, give me your best case that says that the law allows you to make the argument. I mean, I read what you wrote, but I'm having trouble making that connection. Well, there's a couple of cases. First of all, the Illinois Supreme Court in Cochran v. The Village of Libertyville. In that case, the Supreme Court recognized that there were different roles for the village and the county, but the Supreme Court held that they were both subject to the same liability as a possessor. And that's like Section 383 of the Restatement, where it says that one who doesn't act or carries on an activity on the land, but doesn't act on behalf of the possessor, is subject to the same liability and enjoys the same freedom from liability. Those facts were quite different from the facts of this case. Well, I don't think they were different because, again, it's the focus. Well, of course you don't. That's why. Of course not. Of course not. But in those cases, the defendant was doing an act on the premises and was being held liable for that condition that he allegedly created on the premises. But wasn't the construction ongoing in those cases? But I think that's a distinction without a difference. It's still the fact that you have a condition on the premises. We're both being held liable for dark stairwell. Dr. Booth is being held liable as a possessor. He was, by the way, closer in time and space and in a better position to avoid this dangerous condition. Mr. Sanders, you spend a great deal of time in your brief arguing that your client had nothing to do with this property. Once he was done with it, they were done, they were finished, they went away, and that was the end of it until Ms. Harris took a dive down the stairs and then there you were interacting with it again. That is very different from the cases that you've cited. I've read those cases, and they're very different from what you've cited in terms of the ongoing interaction between the builder and the site and the ability to piggyback on the defenses that are available to the owner. So that's what I was getting at when I asked you, give me your best case, because I don't think those cases that you cited are your best cases. But the difference in those cases, the fact that it was an ongoing operation, doesn't really make a difference because it's a creation of the dangerous condition. What are we being held liable for? We're being held liable for dark stairwell. The fact that we created that dark stairwell allegedly four years before is really a distinction, it's an artificial distinction. If we're being held liable for this condition of the property, of a dark stairwell, we're being held liable just as if we are the owner of the stairwell and just as if we have a duty to come back every year and make sure these lights are on. The crux of the argument was that you didn't follow, your client didn't follow the approved plan so the construction was negligent per se. You know, they didn't use that term, but for lack of a better word. And that is the basis of the darkness that caused this plaintiff to take a head dive down the stairs. And there was no talk about your duty to come back for intervening years. It was solely based on the fact that you failed to follow the approved plan. That's their argument as I understand it. I don't see what that has to do with intervening years. You make a lot of arguments about you had no duty to come back. And I think they agree with that. They said you should have done it right in the first place. Right, right. That's also where we create, you know, the issue that it simply created the condition for the acts of, for example, Dr. Booth failing to make sure that light was simply turned on or changed the light on, as well as the acts of Ms. Garris to come from this lit parking lot into the darkened premises. I think we can all agree that it's kind of mysterious how the plaintiff felt. But isn't there expert testimony that the stairwell light should be on at all times? You make some comments about being turned on, but wasn't your client supposed to install light that couldn't be turned off that would be automatically attached to something that would keep it from turning off? So that was all part of the failure to follow the plans, right? But there's two responses to that. First of all, that same expert said that if our light was simply turned on, the accident would have been avoided. And, again, we had nothing to do with Dr. Booth not turning that light on or replacing the bulb. And the second argument is this. As this case proves, the mere fact that we put in some lights doesn't necessarily mean that four years later the lights are going to be on and this stairwell will be illuminated. So, Ms. Cassandras, is it your position that the failure to follow the approved plan that your client had, there are no consequences and has no effect on this case? Our argument is that it mostly created a condition for which the accident took place. Just like the illegal parking of the truck driver in the Downing case, just like the failure of the 911 center in the Abrams case, just like the purported failure of driving in the Thompson, P.C. County case, in each of those cases it mostly created a condition where the unexpected independent acts of Ms. Garris coming onto this darkened premises, for whatever reason, as well as the unexpected acts of Dr. Booth, simply not checking the light bulb or flipping on the switch. Counsel, may I ask you about the testimony of Van Ostrand? Yes. I think the testimony was that the lighting violated Will County zoning and BOCA. Also that there should have been a gate up then if you weren't going to comply with the BOCA and the Will County. Is that the same argument, then? This is the condition? Yes, it's the same argument. And we also make arguments in our brief, and I can answer questions if you'd like, that the instructions on those were wrong, because the BOCA and the local ordinance really dealt with preventing nuisances to the neighbors. But that's really beside the point of today's argument. Today's argument is, again, really a condition for which the acts of Ms. Garris and Dr. Booth come together to create this accident. All right. This whole issue of the letter from Will County Land Use Department, is that still an issue for you or not? I think it is still an issue, simply because it was never put in evidence. I mean, the only testimony that was, was the expert did not give the necessary information to say that it's something that he would rely upon to come to his opinion. Okay. It was used as a basis for his opinion? Well, he did not testify that it was something that he would reasonably rely upon. He never used it as evidence. But he didn't say those words? Or even implied. And frankly, it wasn't put in until the jury instruction conference, where there were some comments about it, and the judge said, well, it's in. Well, it never actually happened. Was there a report that he submitted, a written report? I'm sorry? Did he submit a written report, Van Ostrand? I believe he had. But, again, nobody testified that he relied upon that letter. The point is, nobody put that letter in, as they were supposed to put in. It was not something that he relied upon in his profession to come to his conclusions. Okay. Thank you. Well, for the reasons stated today and the reasons we stated in our brief, we ask the Court to reverse the judgment that was entered in favor of, against Brigham Construction. Anything I didn't get to, Ms. Mannix? Thank you, sir. Ms. Mannix. The first point that I think is critical to make. Counsel, it's being recorded, so you say your name as you start again, so that the listener will know that it is part of the starting.  Thank you, Your Honor. Joan Mannix, on behalf of Plaintiff Appellee Sandra Garris. The first point I'd like to address, because I think it's been pretty well obscured in the briefing by Brigham, is the suggestion that if the Court were to afford any relief as to Booth, and I don't think it should, that Brigham would somehow necessarily be entitled to the same kind of relief. And there's simply no basis for that assertion. Their liability was not based on a condition of the land. Their liability was not based on a premises liability theory. Their liability was based on a completely separate theory from that upon which Booth's liability rested, and that was negligent construction. The jury was expressly directed that Booth and Brigham were separate entities, and that it needed to decide each case against each defendant as though they had been brought as separate lawsuits. So the suggestion by Brigham that it somehow gets to piggyback on any sort of there's simply no basis for that. And we would submit that there's no basis for affording either of them relief, but... Of course, counsel. Yeah. We would expect you to do that, yeah. I would take you by surprise if I argued the opposite, right? Yes, we would. Okay. Frankly, I think that Brigham's argument about Booth's duty is just extremely convoluted. It wasn't held liable for a condition on the property. It was held liable because it failed to meet its obligation to exercise ordinary care in building a building that it was required, it agreed to build, it was paid to build, and it failed to build the building in accordance with the approved plans. I understand your argument, and I think that you're pretty clear in your brief, but can you respond to Mr. Sanders' argument made just a few minutes ago regarding Brigham's failure being responsible for creating only a condition, which then created a scenario that allowed your client to inexplicably fall down the flight of stairs that were in plain view? Well, I think there's a couple of responses to that. First, I think that the evidence was not that the stairs were in plain view, but that's a little bit of a separate issue. This case isn't anything like a condition case where I'm a parked car, and the plaintiff darts in front of another car, and the parked car is the cause of the injuries to the plaintiff. What Brigham is really arguing is a proximate cause issue that was submitted to the jury for its consideration. They argued that this accident wouldn't have resulted but for the negligence of Booth, and it was really Booth's fault. They argued it was really Garris' fault. And those issues were submitted to the jury for its consideration, and the jury was appropriately entitled to decide and assess fault against everybody. It considered Brigham's arguments that it wasn't me, it was them. It considered Booth's arguments less so that it was them, not me. And certainly it ruled on all those issues. There is simply no legal basis for finding that the concurrent negligent conduct of a cotortfeasor somehow automatically precludes a finding of proximate cause by Brigham, which is really what they were arguing. And as to Garris, I guess they were arguing that her conduct was a superseding, intervening cause that broke the causal connection. Neither of those are legally appropriate arguments where you're talking about a co-party or a plaintiff. Why not? Does Garris have some responsibility for walking into a darkened area? She certainly does. And the jury was provided that argument that was argued to them, and they assessed her negligence at 2%. Counsel, you specifically address, I'm sorry for interrupting you, but I've got to get this answer. Relative to the Hanson and Sammer cases that are cited by Booth, does your client meet the status of implied invitee relative to the need to enter the premises for a reason connected to Booth, and Booth received a benefit from the entry? Yes. The evidence was that when she entered into the parking lot, she was, the driveway, the entryway, is partially on Booth's property. That was an entry, you know, Booth derives a benefit from that. That is a co-owned access to the property. It's how everybody, his customers, Modell Funeral Homes customers, they all have access to the property. With respect to this particular plaintiff, though, what benefit did Booth derive from her entry onto his property? I don't think that we have to show that if he derived a benefit, I think we have to show that. In the context of this, of these facts, yes, I would like you to tell me what in the factual scenario depicts a benefit that Dr. Booth would derive from this plaintiff entering onto his property. I'm not talking about any other plaintiff or any other person, just this person. Sure. Well, she testified that the only reason she was, went to the area of the sidewalk was because of the lighting, that the sidewalk and the lighting attracted her. And the evidence was, was that the only reason. What benefit, Ms. Mannix, I'm trying, you know, the law is pretty specific about what constitutes an invitee, and I'm trying to figure out how does your client, and the facts as they, in this case, fit in the confines of what we must look at to determine whether or not she was an invitee. Respectfully, I think that we, that we don't have to establish a benefit from her presence. That's our position, that we don't have to show that her being present on the property bestowed some benefit upon him. I think that what we have. Tell me what, tell me what you have, you believe you have to establish to establish that your client was an invitee of Dr. Booth's property. What do you have to show? We believe, we have to show that the person's entry onto the property was connected to the owner's business or in connection with an. Okay, let's stop with that. How was her entry connected to Dr. Booth's orthodontic business? She was going to a funeral. Well, it's an either or. It's connected with the owner's business or with an activity the owner conducts on or permits to be conducted on the property. Same question. He permitted people to enter onto the property on the jointly owned entryway. She entered into his property because he had a co-owned entryway onto the property that was there and was there because he was conducting his business. Okay, go on with the others. No, that's not the only criteria. That's the crux of your case against Dr. Booth and I think it's really important that you give me your best scenario about why you think this plaintiff was and fit within the parameters of being an invitee. She, the reason she was on the property was because the property was, that was the only way she could access either of the property. It was a joint, it was a joint parking lot area and the fact that it was joint and basically Modell and Dr. Booth allowed everybody to park everywhere was basically a benefit to both of their clients and their customers. There was no designation of specific areas. Like I said, she enters into the property on his land because he allows everybody, Modell Funeral Home, his own patrons to join, to enter onto his land to gain access to the property. She says that the reason she winds up in the area where the accident occurs, the stairwell, is because the sidewalk is there. Under that theory that you're describing, there would never, there could never be a trespasser to Dr. Booth's property. Isn't that right? You know, no, I don't think that that is right. How would a trespasser, what would distinguish a trespasser from the scenario that you're just describing? Well, for example, they make a big deal about, oh, it was a darkened building. In fact, it wasn't a darkened building. It was a lighted building. And if the building, and incidentally, they also talk about this being late at night, it's 7 o'clock at night. I think if she walks onto that property and it's a completely darkened property, and it's 3 in the morning, she's a trespasser. But she's not there at 3 in the morning, and she's in a lighted area of the property. And the reason it's lighted is because Dr. Booth is trying to attract the attention of Modell Funeral Home patrons. He says that. That's why the lights are on. He wants the Modell Funeral Home patrons that he knows that are there until 9 o'clock at night to see his property, to notice his property. That really wasn't the testimony, was it? He said he wanted the building to be noticed. But I didn't notice that he said he wanted the funeral home patrons in particular. He said he kept the lights on in the building until about 1 in the morning because he wants the building to be noticed from the street. It is correct that he testified that he wanted the building to be noticed, but it is also correct that he testified, and if you want me to, I'll try to find the site for you, that the reason he kept the lights on was also specifically so that the Modell Funeral Home patrons would notice his building. And he knew that they were there until 9 o'clock at night because there were waits going on until that point in the evening. The other thing that would have made it clear that she was a trespasser, Dr. Booth knew people were confusing that area of his property with the front entrance. He said it was an area of his property that was open to the public. He knew that people were accessing that area thinking it was the front entrance. The suggestion that she intended to walk down a back exit, fire exit stairwell is simply incorrect. She believed she was accessing the front of the property, and the evidence shows that because of the configuration of the building, that was exactly where a front entrance would be, and people had mistaken that as a front entrance because there would have been no reason at all to put a sign that said the front entrance is on the other end of the property if there wasn't a problem with it being mistaken for a front entrance. Now, Dr. Booth claims, well, that was just for delivery people, but he acknowledges it doesn't say anything like, you know, deliveries to the front. It says, you know, the front entrance is at the south end of the property. So he knew people were mistaking that as the front area of the property. Also, your opponent claims that your client admitted she was a trespasser. That's just not accurate. I mean, he read the testimony. She said that she wasn't, she acknowledged she wasn't there for orthodontic treatment is what it amounts to, and she was there because she was lost, and she was mistaken that she believed it was the funeral home. However, she also testified that what attracted her to that area was that lighting and the fact that it was a sidewalk. Incidentally, I think it is important that it's a sidewalk. A sidewalk is something that is there for people to walk on. So we're not talking about one of the cases, for example, the exciting cases where people are, you know, stampeding at night through, you know, construction areas. This is put there, a sidewalk, in an area that Booth acknowledged was open to the public for people to walk on. I don't know if I answered your question. Thank you. There was no admission that she was a trespasser. Certainly not. All right. Again, as to Booth, I would just like to make the point that their only claim of error is really that the jury should not have been allowed to decide whether, that there was no jury question as to whether she was an implied invitee. And we've cited a lot of cases, well, not a lot, but several cases that basically repeat the mantra that if there's any kind of disputed facts or disputed inferences that can be raised from the facts, then the question of status is for the jury to decide. And we certainly have some evidence from which the jury could properly decide she was an implied invitee. If the court were to decide, however, that as a matter of law it was a mistake to give that instruction, there was, it was a mistake to allow the jury to consider that issue and to give the instruction about implied invitee, the court would have to order a new trial. There was certainly, she, Garris had some status on the property. She couldn't be not an invitee and not a trespasser. So the idea that... Let me ask you this. If she was a trespasser, what would have been, what would Dr. Luke's duty to her have been? Well, it would depend on whether she was a reasonably anticipated trespasser or just a trespasser. Okay, let's go through both of them. If she was a foreseeable trespasser... He would have a duty of ordinary care. Yeah, and what's that? Under the facts of this case... Under the facts of this circumstance, to provide the allegations of negligence were that he failed to restrict access to the unlighted area of the stairwell. He failed to maintain one of the lights in the stairwell that would have illuminated the stairwell at least to the extent that maybe she would have noticed it. He failed to put any warnings or markings that that area wasn't, that there was a stairwell there, that there was no... So he would have a duty just the same as if she were a patient that came there every day or every week for the doctor's treatment, right? He would have... Yes. Let's assume she's not a foreseeable trespasser. What's his duty of care to her? To refrain from any willful or wanton misconduct that could injure her. Under these facts, what would constitute willful or wanton misconduct? I mean, our position would be that he knew people were going in that front area, and yet he allowed the area of the stairwell and the sidewalk in the stairwell, and yet he failed to keep it lit, and he failed to restrict access. I mean, you basically say, you're not giving me anything different for ordinary care and willful and wanton. How can that be? Well, I think it has to do with his knowledge. He knew people were going up there. If you know people are, you know, walking down your sidewalk and off a cliff, you have to do something to protect against them. That was the crux of the lead case. I think that the testimony was that no one had ever fallen before or since, so he had no reason to know that this was going to occur. I don't think that you actually have to have a prior injury to realize that there is a danger.  He testified to that. And he knew that not having the lighting there was unsafe, and he knew, again, this wasn't an area of the property that nobody had any idea anybody was ever going to walk over to. He knew that people were walking in that area, and he had to take the step to actually put a direction at the bottom of the stairwell telling people to go to the other entrance. Counsel, changing gears for a minute here. Can I ask you about verdict form A, which talked about permanent injury? Yeah. And was there any testimony from the doctor, Dr. Piniella, I believe, that there was permanency? There was no testimony from Dr. Piniella that there was permanency. He was permitted to testify that Ms. Garris' wrist injury was chronic, and he expressly defined chronic as he was using it as exceeding, extending beyond a three- to six-month period of time.  injury. So that, again, is I'm not really understanding what the, they don't really argue that there was permanency. They argue that there was no evidence of permanency. They acknowledge that her testimony, Garris' testimony, that up to the date of time, or up to the time of trial, that her wrist was still hurting, she was still wearing a splint on it because of the pain she was continuing, was a sufficient factual basis to instruct on permanency. So that, again, is I'm not really understanding what the, they don't really argue that the instruction was wrong. They argue that Piniella shouldn't have been allowed to testify to chronicity because it was really a synonym for permanency, but he expressly defined how he was using that term. He didn't use a dictionary definition. The jury heard what he was, the way he was using that word. Counsel, thank you very much. Thank you. Your Honor, I just, if you would permit me, my co-counsel just pointed out that, that this is Dr., on the question that you asked about the testimony about the Modell Funeral Home patrons. The, Dr. Booth testified, after 6 o'clock you're not seeing any  Correct? Correct. Correct. Correct. But you want it visible, being the building, to patients. Sure. Because you're next to a funeral home that's open until 9 o'clock, right? That's correct. It's fair to say that you're aware that people come in and out of that parking lot or that drive entrance up through 9 o'clock. Yes. You want people to see your building. Any short rebuttal, gentlemen? Your Honor, I want to point out, as to the very last point made by counsel, the court in the Stevens case ruled that that sort of ephemeral possible benefit is insufficient to constitute any sort of invitation to any general public member, and it doesn't vitiate plaintiff's need to prove that this particular individual accepted an implied invitation. Thank you, counsel. Mr. Littman, that was good. When he said short rebuttal, he really took us at our word. Hopefully I'll do the same. Again, Mike Sanders for the record, for Brigham. In terms of this issue about primacy, chronicity, the difference was that a doctor was able to come in and testify to basically a synonym, say that there's a reason why she has it. That's particularly important to hear when you have a soft tissue injury for which there was no CT or anything like that. And then secondly, with regard to the argument about reversing as to Booth and not Brigham, as we say in our brief, that if you reverse as to Booth, you do have to reverse as to Brigham, because it goes to reasonable foreseeability. And Dr. Booth, as the possessor of that land for four years, cannot reasonably expect her to come on to the premises. How could Brigham, who did it many years before him, put a light on it? Any questions? No. Thank you very much for your arguments that were made here today. Be adjourned.